SATURNINA MONTAÑEZ MONTAÑEZ, en su carácter de madre con patria potestad de su hija menor DULCE MARÍA MONTAÑEZ, demandante y apelada, *v.* GERARDO RODRÍGUEZ, demandado y apelante.

Núm. 9422.—*Sometido:* Abril 9, 1947. *Resuelto:* Abril 22, 1947.

*José C. Jusino,* abogado del apelante; *Manuel Torres Reyes,* abogado de la apelada.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

El demandado apela de una sentencia declarando que Dulce María Montañez, hija de Saturnina Montañez, es su hija natural y ordenándole le pase la suma de diez dólares semanalmente para alimentos.

La corte inferior resolvió que la niña era hija natural del demandado por el fundamento de que al tiempo de su concepción y nacimiento el demandado vivía con la madre en concubinato. El demandado alega que esta conclusión no está sostenida por la prueba.

La madre declaró que en 1941 ella era señorita cuando el demandado se la llevó de casa de su padre para vivir con él; que desde 1941 hasta 1945 vivió con él en dos sitios diferentes, el último de los cuales era la casa de Amparo Rivera; que el demandado la llevó a vivir en estos sitios como su querida; que le daba seis dólares semanales para pagar su hospedaje en casa de Amparo Rivera; que el demandado venía a verla tres veces en semana y salía con ella cada vez que venía; que siempre entró públicamente a la casa y todo el mundo podía verlo venir a la misma; que ella vivía con el demandado cuando concibió a la niña y cuando ésta nació el 15 de febrero de 1945; que ella nunca ha vivido con ningún otro hombre y que el demandado es el padre de la niña; que el demandado la llevó a casa de Dominga Rivera, tía de Amparo Rivera y comadrona, donde se quedó hasta que nació la niña; que el demandado la visitó tres veces, y le pagó a la comadrona $35; que después de nacida la niña, el demandado le daba tres dólares a la semana; que venía con frecuencia a ver a la niña; y que dejó de venir a verla cuando la niña tenía ocho meses de edad.

En el contrainterrogatorio declaró que el demandado era un hombre casado desde que ella era una niña. Cuando volvió a la silla testifical en otra sesión de la corte, dijo la testigo que después de la sesión del primer día, el demandado

vino a verla y le dijo que ella tenía que entregarle la niña porque era de él y le pertenecía. Luego, se encontró con el demandado y la esposa de éste en la calle y la esposa le dijo la misma cosa.

Benigno Gaetán Santiago declaró que vió al demandado visitando a la madre de la niña en casa de Amparo Rivera y que salía con ella, y que sus relaciones continuaron durante el embarazo.

La madre también trajo a declarar a la comadrona, pero ésta negó que el demandado le trajera a la madre o que éste estuviera en modo alguno conectado con el nacimiento de la niña. En vista del hecho de que ella anteriormente había suscrito ante un notario una declaración jurada en términos contrarios, la corte de distrito la acusó de desacato por perjurio en corte abierta.

No nos detenemos a examinar la declaración de un número de testigos del demandado, incluyendo al propio demandado y a Amparo Rivera, todos los cuales negaron la historia de la madre detalle por detalle. La corte inferior no dió crédito a su testimonio y nosotros por tanto lo descartamos. Toda vez que la corte de distrito dió crédito a la declaración de la madre, la aceptamos como cierta. También tomamos en consideración la observación del juez de distrito de que la niña tenía un marcado parecido con el demandado. Sin embargo, la prueba es insuficiente para sostener la sentencia.

■ La sec. 1 de la Ley núm. 229, Leyes de Puerto Rico, 1942 ((1) pág. 1297), elimina la barrera del adulterio que en el pasado el art. 125 del Código Civil había levantado contra el reconocimiento de hijos como hijos naturales; pero la Ley núm. 229 fué aprobada a la luz del art. 125, y no eliminó sus otros requisitos. En su consecuencia, si bien un hijo adulterino nacido como en este caso después de entrar en vigor la Ley núm. 229, puede ahora reconocerse como hijo natural en virtud de la sec. 1 de dicha Ley, tiene todavía que cumplir con una de las disposiciones del art. 125

para obtener dicho *status*. Véanse *Correa* v. *Sucn. Pizá,* 64 D.P.R. 987; *Vázquez* v. *De Jesús,* 65 D.P.R. 900; Muñoz Morales, *"La Ley Núm. 229 de 1942 y sus Implicaciones", La Toga,* ed. de 16 de octubre de 1944, págs. 6–7. *Cf. Cruz* v. *Andrini,* 66 D.P.R. 124; *Fernández* v. *Sucn. Fernández,* 66 D.P.R. 881.

■■ La corte inferior aparentemente reconoció este requisito. Resolvió que las partes habían estado viviendo en concubinato, lo que traería a la niña dentro del art. 125. Pero la dificultad es que los hechos aquí envueltos revelan a lo sumo que la madre era la querida del demandado. Esto no constituye concubinato. Para que exista el concubinato la pareja debe hacer vida de esposos sin serlo. *Vázquez* v. *De Jesús,* supra, págs. 903–4, y casos en él citados.

La demandante basó su caso en la disposición sobre concubinato contenida en el art. 125 del Código Civil. No alegó, y la corte inferior no lo resolvió, que el padre estaba obligado a reconocer a la niña como hija natural debido a alguna otra disposición del art. 125. Por tanto, no hemos considerado dicha cuestión.

*La sentencia de la corte de distrito será revocada y se dictará nueva sentencia declarando sin lugar la demanda.*